**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 15-570 (ES) |
| | : | |
| v. | : | Hon. Esther Salas, U.S.D.J. |
| | : | |
| CLIFFORD WARES | : | |

_____

BRIEF IN SUPPORT OF THE GOVERNMENT'S MOTIONS IN LIMINE
_____

PAUL J. FISHMAN
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

Danielle Alfonzo Walsman
Meredith J. Williams
Assistant United States Attorneys

# **Table of Contents**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................1

BACKGROUND .............................................................................................. 2

ARGUMENT....................................................................................................3

I.     Defendant's Removal from the Courtroom is Appropriate if Defendant
       Engages in Obstructionist and Disruptive Behavior.................................. 3

       A.     Examples of Factual Circumstances Where Defendants
              Have Been Removed from the Trial Courtroom ........................... 6

       B.     The Process for Removing a Defendant From Trial..................... 14

       C.     Any In-Court Disruptions by Defendant Should Not Result In a
              Mistrial ....................................................................................... 16

II.    Particularized Findings, On the Record, Are Needed to Support a
       Decision to Shackle a Defendant ............................................................ 17

III.   Defendant Should Not Be Permitted To Cross-Examine the Victims
       As To Sexual History, If Any, As Such Information Is Irrelevant
       And More Prejudicial Than Probative....................................................... 21

IV.    The Defendant Should be Prohibited from Informing the Jury that, if
       convicted, the charges contained in the Indictment carry Mandatory
       Minimum Sentences ............................................................................... 25

V.     The Absence of Images with Respect to Count One................................ 27

CONCLUSION ............................................................................................. 30

i

### TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

Chambers v. NASCO, Inc.
 501 U.S. 32 (1991)............................................................................... 3

Deck v. Missouri,
 544 U.S. 622 (2005) ............................................................. 17, 18, 20

Diaz v. United States,
 223 U.S. 442 (1912) ............................................................................ 4

Illinois v. Allen,
 397 U.S. 337 (1970) ............................................................. 3, 4, 5, 16

Michigan v. Lucas,
 500 U.S. 145 (1991) ......................................................................... 23

People v. Boose,
 362 N.E.2d 303 (Ill. 1977)...............................................................20

Pope v. United States,
 298 F.2d 507 (5th Cir. 1962)........................................................... 25

Rogers v. United States,
 422 U.S. 35 (1975)........................................................................... 25

Sides v. Cherry,
 609 F.3d 576 (3d Cir. 2010) ........................................................... 17

Szuchon v. Lehman,
 273 F.3d 299 (3d Cir. 2001) ............................................... 19, 21, 23

United States v. Delatorre,
 2008 WL 312647 (N.D. Ill. Jan. 30, 2008) ............................... 9, 11

United States  v. Street,
 531 F.3d 703 (8th Cir. 2008).......................................................... 24

United States v. Abad,
 350 F.3d 793 (8th Cir. 2003).......................................................... 23

United States v. Awala,
 260 F. Appx. 469 (3d Cir. 2008) ........................................... passim

United States v. Baker,
    432 F.3d 1189 (11th Cir. 2005) ................................................................ 20

United States v. Ballinger,
    2011 WL 797379 (S.D. Ill. 2011) ......................................................... 23, 24

United States v. Bamberger,
    456 F.2d 1119 (3d Cir. 1972) ................................................................... 17

United States v. Benabe,
    654 F.3d 753 (7th Cir. 2011).......................................................... passim

United States v. Boyles,
    57 F.3d 535 (7th Cir. 1995)...................................................................... 23

United States v. Brantley,
    342 F. App'x 762 (3d Cir. 2009) ...............................................17, 18, 19, 20

United States v. Brazel,
    102 F.3d 1120 (11th Cir. 1997) ................................................................ 19

United States v. Brooks,
    125 F.3d 484 (7th Cir. 1997)..................................................................... 19

United States v. Buculei,
    1262 F.3d 322 (4th Cir. 2001)................................................................... 28

United States v. Calderon,
    559 F. Appx. 554 (7th Cir. 2014).................................................... passim

United States v. Coutentos,
    651 F.3d 809 (8th Cir. 2011)..................................................................... 27

United States v. Curry,
    2006 WL 1320083 (D.N.J. 2006) ............................................................. 20

United States v. Frank,
    956 F.2d 872 (9th Cir. 1991)..................................................................... 26

United States v. Mahasin,
    442 F.3d 687 (8th Cir. 2006).................................................................... 19

United States v. Mejia,
    559 F.3d 1113 (9th Cir. 2009)................................................................... 19

iii

United States v. O'Driscoll,
    250 F. Supp. 2d 443 (M.D. Pa. 2002) ....................................................... 21

United States v. Paris
    2016 WL 1059393 (8th Cir. March 17, 2016) ...........................................27

United States v. Polk,
    508 F.Supp.2d 89 (D.Me. 2007) ...................................................... 28-29

United States v. Polouizzi,
    564 F.3d 142 (2d Cir. 2009) .............................................................. 26

United States v. Raplinger,
    555 F.3d 687 (8th Cir. 2009).............................................................. 24

United States v. Rogers,
    587 F.3d 816 (7th Cir. 2009).............................................................. 23

United States v. Salehi,
    187 F. Appx. 157 (3d Cir. 2006) .................................................. 17, 18, 19

United States v. Shannon,
    512 U.S. 573 (1994)...................................................................... 25, 26

United States v. Sterling,
    738 F.3d 228 (11th Cir. 2013)......................................................... 4, 5, 16

United States v. Stewart,
    325 F. Supp. 2d 474 (D. Del. 2004) ...................................................... 20

United States v. Tagliamonte,
    340 F. App'x 73 (3d Cir. 2009) ...................................................... 19, 20

United States v. Van Sach,
    458 F.3d 694 (7th Cir. 2006)............................................................. 19

United States v. Watkins,
    983 F.2d 1413 (7th Cir. 1993).............................................................. 6

## **Statutes**

Fed. R. Crim. P. 43(a)(2) ............................................................. 4, 16

Fed. R. Crim. P. 43(c)(1)(C) .......................................................... 3, 4

FRE 401 .................................................................................. 24

FRE 412 ......................................................................... 21, 22, 29

FRE 412(a) ............................................................................... 21

FRE 412(b) ............................................................................... 22

FRE 412(c)(1) ........................................................................... 23

FRE 412(c)(2) ........................................................................... 23

## PRELIMINARY STATEMENT

By this memorandum, the Government seeks (1) to provide the Court with the case law regarding a defendant's behavior in court and the use of restraints at trial, (2) to preclude the defendant from eliciting any evidence regarding the victims' past sexual behavior or purported sexual predisposition, in violation of Federal Rules of Evidence ("FRE") 412, (3) to preclude the defendant from informing the jury about the mandatory minimum sentences applicable in this matter, and (4) to provide the Court with case law regarding Count One of the Indictment, which does not require evidence of an image of child pornography.  The Government respectfully reserves its right to supplement this memorandum by oral argument or written memorandum.

**BACKGROUND**

On November 3, 2015, the Grand Jury returned a six-count Indictment charging the defendant with:  (1) one count of the production and attempted production of child pornography, in violation of Title 18, United States Code, Section 2251(a) (Count One); (2) two counts of online enticement and attempted online enticement of a minor to engage in criminal sexual activity, in violation of Title 18, United States Code, Section 2422(b)(Counts Two and Four); (3) two counts of interstate extortionate threats, in violation of Title 18, United States Code, Section 875(d)(Counts Three and Six); and (4) one count of interstate travel to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2423(b)(Count Five).  The Indictment arises out of events that occurred from in or about May 2011 through in or about November 2011, after the defendant met a minor female residing in Passaic County through an online chat application and then proceeded to infiltrate her social network in order to exploit and sexually abuse multiple minor females.  As alleged in the Indictment, during the summer of 2011, the defendant (then, thirty-eight years old) engaged in sex acts with fourteen year old "Hannah,"[1] had thirteen year-old "Kaitlyn" self-produce images of child pornography for him, and, throughout the scheme, used threats, intimidation, and public

---

[1] Pursuant to the Protective Order, the victims are referred to only by their first names.

humiliation in order to bend both victims to his will.[2]

## ARGUMENT

### I.   Defendant's Removal from the Courtroom is Appropriate if Defendant Engages in Obstructionist and Disruptive Behavior

If a criminal defendant disrupts a trial, a court may bar him from the courtroom after giving an appropriate warning to allow for an adjustment in behavior.  See Illinois v. Allen, 397 U.S. 337, 343 (1970); see also Chambers v. NASCO, Inc. 501 U.S. 32, 44 (1991) (citing Allen for this principle); Fed. R. Crim. P. 43(c)(1)(C) and (2)[3]).  As the Supreme Court held in Allen, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."  Allen, 397 U.S. at 343.  To warrant removal, a defendant's behavior need not be "violent, threatening or obscene;" removal is appropriate where defendant's behavior is "obstructive, disrespectful, and potentially inflammatory."  See United States v. Benabe, 654 F.3d 753, 766 (7th Cir. 2011); United States v. Sterling, 738 F.3d 228, 233-34 (11th Cir.

---

[2] The Government relies on the factual background set forth in its brief in support of the Government's Pre-Trial Motions, filed on April 15, 2016.

[3] Fed. R. Crim. P. 43(c)(1)(C) and (2) provide, "[a] defendant who was initially present at trial . . . waives the right to be present . . . when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom. . . .  If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence."

2013) (defendant was removed after refusing to participate in trial and responding to the trial court's questions with "nonsensical phrases").

Pursuant to Rule 43, only "[a] defendant who **was initially present** at trial" may waive his right to be present through his conduct.  Fed. R. Crim. P. 43(c)(1)(C) (emphasis added).  Courts have interpreted "initially present at trial" as meaning present for the beginning of jury selection, even if defendant is removed before the prospective jurors enter the courtroom.  See Benabe, 654 F.3d at 771-72 (citing Diaz v. United States, 223 U.S. 442, 455 (1912) and decisions from the First, Fifth, Sixth, and Eleventh Circuits); Sterling, 738 F.3d at 236-37.  Notably, Rule 43 expressly defines "jury impanelment" as a stage of the trial.  Fed. R. Crim. P. 43(a)(2); see Sterling, 738 F.3d at 236 (noting the same).

Additionally, "once lost, the right to be present can . . . be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."  Allen, 397 U.S. at 343.

Removal of disruptive defendants from courtrooms has routinely been upheld by Courts of Appeals applying the rationale set forth in Allen and Federal Rule of Criminal Procedure 43(c)(1)(C).  See, e.g., United States v. Awala, 260 F. Appx. 469 (3d Cir. 2008)(unpublished); Benabe, 654 F.3d 769 (7th Cir. 2011); Sterling, 738 F.3d 228 (11th Cir. 2013).  In Awala, the Court of Appeals upheld a district court's decision to remove a defendant from the trial courtroom and not give him the opportunity to return.  Id. at 470.  In Awala,

the first warning from the district court regarding removal came at a pretrial hearing after Awala, who was proceeding pro se, "became disruptive." Id. at 471. Specifically, the court warned that Awala would be removed from the courtroom and stand-by counsel would be appointed if he persisted in disruptive behavior. Id. Before removing Awala from the courtroom during trial due to his disruptions, the court twice warned him of the consequences of his actions: "You've got to compose yourself or I'll take you out of here[]" and "Can you compose yourself and do you want me to continue or do you want me to have you removed from the courtroom?" Id. at 471.

Removal of a disruptive defendant from a courtroom is permitted because "[i]t would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." Allen, 397 U.S. at 346. As explained by the Seventh Circuit in Benabe, the two defendants ordered removed from the court in that case "through their tandem campaign of obstreperous interruptions and frivolous legal arguments . . . knowingly and voluntarily waived their right to be present at trial." 654 F.3d at 769.

Most Courts of Appeals apply a three-pronged inquiry to review a district court's determination that a criminal defendant waived his right to be present at trial. See Benabe, 654 F.3d at 769. The first question is "whether the district court abused its discretion when it found that the accused had knowingly and voluntarily waived the right [to be present at trial], reviewing for

5

clear error the district court's factual finding that the waiver was knowing and voluntary." Id. (citing United States v. Watkins, 983 F.2d 1413, 1419 (7th Cir. 1993)). Reversal will occur only if "the district court 'left unexplored serious questions as to whether the [defendant's] absence was knowing and voluntary." Id. The second prong of the inquiry is "whether the court appropriately exercised its discretion in concluding that there was a controlling public interest to continue the trial in spite of the defendant's absence." Id. Considerations to this end include "the likelihood that the trial could take place with the defendant present, the difficulty of rescheduling, the inconvenience to jurors, and the burden on the government and others of having to undertake two trials" (with the burden being greater  in a multiple-defendant case). Id. The third prong of the inquiry is, if the district court erred in either prong one or two, whether the error was harmless when viewed in light of the entire record. See id.

### A. Examples of Factual Circumstances Where Defendants Have Been Removed from the Trial Courtroom

Below are some illustrative examples where defendants were removed from courtrooms for all or part of trial due to their disruptive behavior.

In the underlying state court trial in Allen, the defendant Allen was pro se, had court-appointed stand-by counsel, and no co-defendants. Id. at 339. The first disruption occurred when Allen examined a juror "at great length" during voir dire, was interrupted by the judge and instructed to limit his questions "solely to matters relating to the prospective juror's qualifications,"

and "started to argue with the judge in a most abusive and disrespectful manner." Id.  In an effort to control the proceedings, the judge asked stand-by counsel to take over voir dire.  See id.  Allen then "continued to talk," stated that stand-by counsel could not represent him, and concluded by stating, "'When I go out for lunchtime, you're (the judge) going to be a corpse here,'" tearing his attorney's file, and throwing it on the floor.  Id. at 340.  At this point, the judge warned Allen that he would be removed from the courtroom if he behaved himself in that manner again.  Id.  The warning had no effect on Allen].  He responded by telling the judge:

> There's not going to be no trial, either.  I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial.

Id.  Allen persisted in "more abusive remarks" and as a result he was removed from the courtroom, and the jury was selected without him.  Id.

Before the trial began and while the jury was not in the courtroom, Allen requested to be present for trial.  Id.  The court agreed with the caveat that Allen "behaved [himself] and [did] not interfere with the introduction of the case."  Id.  Once the jury was seated and defense counsel moved to exclude witnesses from the courtroom, Allen persisted in his disruptive conduct, stating, "'There is going to be no proceeding.  I'm going to start talking and I'm going to keep on talking all through the trial.  There's not going to be no trial like this.  I want my sister and my friends here in court to testify for me.'"  Id. at 340-41.  The judge ordered Allen removed from the courtroom at this point.

See id. at 341.  After the prosecution presented its case, Allen assured the court that he would behave properly and was allowed to return to the courtroom.  Id.  He was present for the remainder of trial, and his appointed counsel conducted his defense.  Id.

In upholding Allen's removal from the courtroom as constitutional, the Supreme Court explained that "Allen's behavior was clearly of such an extreme and aggravated nature as to justify either his removal from the courtroom or his total physical restraint."  Id. at 346.  The Court noted that the trial court repeatedly warned Allen that maintaining his disruptive conduct would result in his removal from the courtroom and, based on Allen's responses, stated that the court's use of its criminal contempt powers would have been futile.  Id.  Additionally, the Court found that the absence of a constitutional violation was further supported by the fact that "Allen was constantly informed that he could return to the trial when he would agree to conduct himself in an orderly manner."  Id.

More recently, the Seventh Circuit also upheld the removal of disruptive defendants in two cases involving defendants who adhere to the "sovereign citizen" ideology: Benabe, 654 F.3d 753 (7th Cir. 2011) and United States v. Calderon, 559 F. Appx. 554 (7th Cir. 2014).  These cases are instructive for their descriptions of the types of outbursts and warnings that supported exclusion from a courtroom under Rule 43(c)(1)(C).  Benabe is notable for the extent of the district court's efforts to warn a defendant before removing him from the courtroom.

8

In Benabe, the Seventh Circuit discussed, at length, the removal of two defendants from the courtroom who each interrupted the proceedings with repeated outbursts challenging the legitimacy of the proceedings.  See Benabe, 654 F.3d at 761-74.  The first defendant to challenge the proceedings, Delatorre, was represented by counsel but filed multiple documents pro se, which challenged "the legitimacy of the United States government, its jurisdiction over him, and the validity of the charges against him…" Id. at 761; see also U.S. v. Delatorre, 2008 WL 312647 at *3-4 (N.D. Ill. Jan. 30, 2008) (district court opinion addressing Delatorre's conduct and motions).  Then, at an early pretrial motion hearing, Delatorre refused to participate in the proceedings based on his ideology, at which point the court ordered a competency evaluation (he was later found to be competent).  Benabe, 654 F.3d at 761.  At two status hearings that followed, Delatorre was obstructionist, claiming, among other things that the indictment was not against him, because his name was not spelled with all capital letters; demanding that the prosecutor define "person" as it applied in the proceedings; and demanding that his competency be addressed immediately instead of waiting for the court-ordered hearing date.  Id.  When the court ended the second status hearing, Delatorre continued to speak, stating, "Let the record reflect the Court is not allowing me to address my various issues and is intending to punish me for exercising my rights as a sovereign secured party creditor." Id. at 762.  At another hearing, Delatorre continued with his disruptive behavior, rejecting his

9

court-appointed counsel and stating that the government did not provide him
with the basis for his prosecution, which he had requested.  Id.

    After experiencing this range of disruptive conduct from Delatorre, the
Court instructed him at a pretrial hearing that, at trial, "any outbursts in front
of the jury would prejudice him." Benabe, 654 F.3d at 762.  Delatorre,
however, continued to challenge "what he called the court's 'subject matter and
personam jurisdiction[.]'" Id.  When, at this hearing, the court denied the
requests within Delatorre's pro se filings, Delatorre peppered the court with
questions about the order, and the court asked that Delatorre be quiet.  Id.
Delatorre agreed, but shortly thereafter interrupted the court and demanded
answers to his questions, continuing "for several more pages of transcript
without interruption." Id. at 762-63.  During this conference, the court stated
"that it was becoming increasingly likely that Delatorre would continue in his
sovereign-citizen assertions out of turn and in front of the jury" but "expressed
his reluctance to either remove Delatorre from the courtroom or to bind and
gag him at trial." Id. at 763.  At the next status conference, approximately
three weeks later, Delatorre persisted in his behavior and "tried to seize the
agenda by repeating his jurisdictional challenges;" the court permitted him to
talk but then "asked Delatorre whether he could refrain from disrupting the
trial," and Delatorre refused to answer and continued with his "ramblings." Id.
The court repeated the inquiry, and Delatorre again refused to answer and
continued with his own arguments.  Id.  The court then explained to Delatorre,
"if you disrupt the jury selection, I'm going to have no choice but to have you

10

removed from the courtroom.  Do you understand that?"  Id.  After Delatorre continued to interrupt, the court warned him that "the consequences of continuing along these lines will be you being removed from the trial and the trial will proceed without you."  Id.  The court then ordered Delatorre removed from the courtroom.  Id.

The Court then issued a written opinion that included a warning to Delatorre "that his continued failure to obey this Court's orders could result in him being barred from the courtroom during jury selection or trial to avoid potential prejudice to his six co-Defendants and to himself."  Benabe, 654 F.3d at 763 (quoting Delatorre, 2008 WL 312647, at *3).  As all defendants were not present for each of the pretrial hearings, the court then requested that all defense counsel share the order that accompanied the written opinion with their clients.  See id. at 763-64.  Before the trial began and with all defendants present, the court instructed the assembled defendants that,

> [H]e would ask 'each defendant if they intend to speak
> during the trial without . . . court permission.  And
> any defendant who responds in the affirmative will be
> held at the [jail] from day one of the trial and will see
> the trial from a seat at the [jail].  I will not allow any
> defendant to prejudice any of the other defendants on
> trial before any of the prospective jurors. . . . [A]ny
> further attempts by Mr. Delatorre or any defendant to
> disrupt this trial will have to be interpreted by me as a
> willingness on the part of that defendant to watch the
> trial at the [jail], and I will make arrangements to
> ensure that that happens.

Id. at 764.

11

Despite these warnings, defendant Benabe interrupted the court during that status conference with behavior and "sovereign citizen"-type arguments similar to those pursued by Delatorre.  <u>Benabe</u>, 654 F.3d at 764.  The court specifically warned Benabe that he would be removed if he persisted with this behavior in court, stating: "I will ask you whether or not you're going to make statements without . . . court permission during the trial.  If you give me no answer or if you say that you will, I will hold you at the [jail] while the trial proceeds."  <u>Id.</u>  Benabe did not abate in his conduct, and he was ordered removed.  <u>Id.</u>  Shortly thereafter, Delatorre, who was back in the courtroom, re-started his disruptive conduct and was also removed.  <u>Id.</u>  All defendants were once again present for a hearing the day before jury selection began, and Benabe and Delatorre again persisted in their conduct and refused to agree "not to make any statements to the jury without permission."  <u>Id.</u>  They were both removed.[4]  <u>Id.</u>  The court explained that a room at the jail would provide a live video feed from the courtroom from which Delatorre and Benabe could observe trial and that they "were free to return to the courtroom at any time if they would 'indicate that they will not speak in front of the prospective jurors or the final jury . . . without the permission of this Court, as long as they'll abide by simple courtroom behavior.'"  <u>Id.</u> at 765.

---

[4] The Seventh Circuit explained that, in hindsight, this inquiry and removal should have occurred on the day of jury selection out of the presence of prospective jurors, but it found the error harmless.  <u>Benabe</u> at 772-73.

During jury selection, "the court informed the prospective jurors that Delatorre and Benabe 'have been excused from attending the trial . . . for reasons that have nothing to do with the merits of the trial." Id.  As part of voir dire, the court also reminded the jurors regarding the presumption of innocence and asked if Delatorre and Benabe's not being present would have any effect on them.  Id.  Any jurors that indicated that Delatorre and Benabe's absence would affect their judgment were excused for cause.  Id.

Similarly, in United States v. Calderon, the defendant was removed from the courtroom after repeatedly interrupting court proceedings with "baseless jurisdictional claims common among the 'sovereign citizen' movement[,]" including filing pro se submissions despite being represented by counsel, interrupting the judge and his own lawyer during hearings, and refusing to approach the podium when called during hearings.  559 F. Appx. 554, 554 (7th Cir. 2014)(unpublished).  On the day of jury selection, Calderon was present. See id. at 555.  Before any prospective jurors came into the courtroom, however, Calderon interrupted the prosecutor and one of his attorneys and claimed that his attorneys could not speak for him, because he was "a secured party creditor."  Id.  The trial judge reminded Calderon of his earlier pretrial disruptions, advised him that his interruptions prejudiced him and his co-defendant, and explained that "further disruptions would lead to [his] exclusion from the courtroom[.]"  Id.  While the judge was speaking, Calderon repeatedly interrupted him.  See id.  As in Benabe, the judge "offered Calderon an opportunity to promise that he would end his disruptions," Calderon refused,

13

and Calderon was removed from the courtroom.  Id.  Also as in Benabe, the court instructed the jury as to Calderon's absence, explaining that he "had been excused from attending trial for reasons unrelated to the case." Id. at 555.   A live video feed was set up to allow Calderon to watch the trial from another courtroom, and Calderon was instructed "that he could return if he would promise to end his disruptions." Id.

## B. The Process for Removing a Defendant From Trial

A practical example of how a court may apply the principles set out in Allen and related cases is provided by the Federal Judicial Center's Benchbook for U.S. District Court Judges.  See Federal Judicial Center, Benchbook for U.S. District Court Judges, Section 5.01(A) at 145-46 (6th Ed. March 2013) ("Benchbook").  The Government respectfully recommends that, in light of the law discussed above, the Court follow the steps set forth below in the event the circumstances discussed herein arise.

The first step in applying the Allen principles towards possible removal of a disruptive defendant is that "[t]he court should warn the defendant that continuation of the disruptive conduct will lead to removal of the defendant from the courtroom." Benchbook at 145.  Courts of Appeals have approved of various phrasings for warnings, as long as the cause and effect is made clear. For example, the Third Circuit has approved of warnings that included, "You've got to compose yourself or I'll take you out of here" and "Can you compose yourself and do you want me to continue or do you want me to have you removed from the courtroom?" See Awala, 260 F. Appx. at 471.  Perhaps most

14

effectively, the court in <u>Calderon</u> advised the defendant that his disruptions would prejudice him in front of the jury, that continued interruptions would result in his removal, and then "offered Calderon an opportunity to promise that he would end his disruptions." <u>See</u> <u>Calderon</u>, 559 F. Appx. at 555.

The second step is that, "[i]f the disruptive conduct continues, the court should determine whether it warrants removal of the defendant." <u>Benchbook</u> at 145.  As explained above, the court should establish on the record that the defendant's waiver of his right to be present at trial was knowing and voluntary and that "a there was controlling public interest to continue the trial in spite of the defendant's absence." <u>Benabe</u>, 654 F.3d at 769.  Removal of the defendant for trial should occur no earlier than the beginning of the first day of trial: the outset of jury selection, before the prospective jurors are present.  <u>See</u> <u>Benabe</u>, 654 F.3d at 771-72; <u>Sterling</u>, 738 F.3d at 236-37; Fed. R. Crim. P. 43(a)(2).

The third step is that, "[a]t the beginning of each session, the court should advise the defendant that he or she may return to the courtroom if the defendant assures the court that there will be no further disturbances." <u>Benchbook</u> at 145.  While the Third Circuit found this not to be necessary in <u>Awala</u>, 260 F. Appx. at 471, the Government requests that, in the interests of protecting the record and in light of <u>Allen</u>, this choice be presented to the defendant each morning before the jury is seated.  <u>See</u> <u>Allen</u>, 397 U.S. 343 (specifically stating that the right to present can be reclaimed by defendant agreeing to comport himself appropriately).

15

The fourth and final step is that, "[t]he court should consider ways to allow the defendant to communicate with his or her attorney to keep apprised of the progress of the trial.  The court may consider making arrangements to allow the defendant to hear or see the proceedings via electronic means, if available." Benchbook at 145.  It is the Government's understanding, that the U.S. Marshal's Service will make a cell available for the defendant, if needed, with live video feed to the courtroom.  This is similar to the procedure applied without findings of error in Benabe and Calderone.  See Benabe, 654 F.3d at 765; Calderon, 599 F. Appx. at 555.

## C. Any In-Court Disruptions by Defendant Should Not Result In a Mistrial

In Awala, the Court of Appeals specifically stated that a mistrial would not have been the appropriate response to Awala's disruptive conduct.  The Circuit noted as justified the trial judge's reasoning that "Awala's disruptive behavior 'was more likely than not calculated to cause a mistrial'" and found that the trial court responded properly by providing an "appropriate curative instruction." Awala, 260 F. Appx. at 471.  Following this finding, the Circuit explained that "allowing 'courtroom outbursts and disruptions' to constitute 'justifications for retrials . . . would provide an easy device for defendants to provoke mistrials whenever they choose to do so.'" Id. (quoting United States v. Bamberger, 456 F.2d 1119, 1128 (3d Cir. 1972)).

16

## II. Particularized Findings, On the Record, Are Needed to Support a Decision to Shackle a Defendant

At a hearing before Your Honor in November 2015, the defendant engaged in disruptive behavior including spitting blood on the defense counsel's table and the wall of the courtroom.  During his subsequent mental competency evaluation, the defendant also indicated a desire to continue spitting blood during future court appearances.  On other occasions, the defendant attempted to refuse to be brought to court and needed to be restrained during the hearing to appoint new counsel.  Since being granted new counsel, the defendant has appeared in court without incident.  The Government does not at this time seek for the defendant to be shackled at trial; however, the below case law is being provided for Your Honor's reference should any of the defendant's prior conduct recur.

Neither district courts nor the U.S. Marshal's Service may adopt a "general" or "routine" policy of shackling defendants or witnesses during trial. Deck v. Missouri, 544 U.S. 622, 626 (2005); United States v. Brantley, 342 F. Appx. 762, 768-69 (3d Cir. 2009) (unpublished); United States v. Salehi, 187 F. Appx. 157, 174 (3d Cir. 2006).  Rather, defendants can be restrained only in cases where the court finds that the "perils of shackling are unavoidable." Deck, 544 U.S. at 632; see also Sides v. Cherry, 609 F.3d 576, 581 (3d Cir. 2010) (shackling should be permitted only "where justified by an essential state interest specific to each trial").  As the Supreme Court has noted:

17

> We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations. We are mindful of the tragedy that can result if judges are not able to protect themselves and their courtrooms. But given their prejudicial effect, due process does not permit the use of visible restraints <u>if the trial court has not taken account of the circumstances of the particular case</u>.

<u>Deck</u>, 544 U.S. at 632 (emphasis added).  The Court of Appeals has indicated, moreover, that even if the shackles are not visible, that does not justify their use for those defendants who do not pose such a risk requiring the use of shackles during trial.  <u>Brantley</u>, 342 F. Appx. at 769-70.  A district court's finding that non-visible shackles create "'no unfair prejudice' is no substitute for a meaningful inquiry into the need to restrain a defendant during trial."  <u>Id.</u>; <u>see also</u> <u>id.</u> at 770 ("There is certainly nothing convenient about requiring anyone to suffer the indignity of shackling unless his or her own conduct justifies it.").

Accordingly, a court must make particularized findings on the record justifying the need to shackle or otherwise physically restrain a defendant.  <u>See</u> <u>Deck v. Missouri</u>, 544 U.S. 622, 633 (2005); <u>accord</u> <u>United States v. Salehi</u>, 187 F. Appx. 157, 173-75 (3d Cir. 2006) (unpublished); <u>Brantley</u>, 342 F. Appx. at 768 ("[T]he trial judge must make a case specific and individualized assessment of the defendant on trial, taking into account special security needs or the

18

escape risk of the defendant.").[5]  A court may not simply defer to the Marshal's Service.  Brantley, 342 F. Appx. at 768-69.  Rather, a court must make its own findings for the necessity of shackles, including specifics regarding the compelling need for the additional security, the fact that a less restrictive alternative to the security measures does not exist, and that restraining the defendant will not impair his ability to confer with counsel.  See Szuchon v. Lehman, 273 F.3d 299, 314 (3d Cir. 2001).  The factual record which must be created "could come from any proper source, such as the government, the Marshal's Service, the defendant's criminal record, or the Court's observations."  Salehi, 187 F. Appx. at 174.

Factors that can be considered in determining whether shackles or other restraints are necessary include: history of violent, inappropriate conduct during the proceedings or in the past, Szuchon, 273 F.3d at 313-14; see United States v. Mejia, 559 F.3d 1113, 1118 (9th Cir. 2009); United States v. Brooks, 125 F.3d 484, 502 (7th Cir. 1997); history of disruptive conduct in pre-trial detention or prison, United States v. Tagliamonte, 340 F. Appx. 73, 80-81 (3d Cir. 2009)(unpublished); United States v. Van Sach, 458 F.3d 694, 699-700 (7th Cir. 2006); facts that make it likely the defendant will attempt to escape or injure a witness or participant in the proceedings, Tagliamonte, 340 F. Appx. at 80-81; United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006); United

---

[5] The Brantley panel indicated that similar justification was needed for other obvious security measures, e.g., the placement of Marshals near the defendant while testifying.  Brantley, 342 F. Appx. at 768, n.7.

States v. Brazel, 102 F.3d 1120, 1156-57 (11th Cir. 1997); the seriousness of

the charges and potential sentence; the physical attributes of the defendant;

and the risk of violence caused by onlookers, e.g., fellow gang members, rivals,

etc., see United States v. Baker, 432 F.3d 1189, 1244 (11th Cir. 2005); People

v. Boose, 362 N.E.2d 303, 305-06 (Ill. 1977), cited approvingly in Brantley, 342

F. Appx. at 768 n.6. See generally Deck, 544 U.S. at 628.

When warranted by the circumstances, courts have not hesitated to

make such a factual record and order a defendant to be restrained during trial.

See, e.g., Tagliamonte, 340 F. Appx. at 80-81 (court did not abuse its discretion

where it required leg shackles after finding that defendant had two open

warrants for his arrest and had been rejected from two jails as a "pest"); United

States v. Curry, No. 04-280 (FSH), 2006 WL 1320083, at *1 n.1 (D.N.J. May 12,

2006) (finding that defendants' legs should be shackled at trial, but hidden

from jury under drape on counsel tables, because it "is the least restrictive

method regularly employed by the U.S. Marshal's Service in cases such as this

where there is a credible proffer of violence against witnesses;" court further

found that defendants could "freely speak to counsel and assist in their own

defense because there will be no manacles"); United States v. Stewart, 325 F.

Supp. 2d 474, 495-97 (D. Del. 2004) (stun belt and leg shackles were

appropriate at trial where defendant was charged with serious drug crimes,

faced possible life sentence, had threatened witnesses, and had once attacked

two deputy U.S. Marshals while shackled; belt and shackles were not visible to

the jury, and did not interfere with defendant's ability to consult with counsel),

20

aff'd 2006 WL 1222340 (3d Cir. May 4, 2006); United States v. O'Driscoll, 250 F. Supp. 2d 443 (M.D.Pa. 2002) (district court made extensive factual findings that defendant with violent criminal history, charged with first degree murder, and already serving a life sentence, posed extreme security risk and serious escape risk; therefore use of stun belt and shackles at trial and during jury selection would not impose a substantial burden upon defendant's constitutional rights); see also Szuchon, 273 F.3d at 313-314 (defendant's legs and right hand were appropriately shackled after he grabbed and kicked a prosecution witness; however, one of defendant's hands was free to take notes to assist counsel).

### III. Defendant Should Not Be Permitted To Cross-Examine the Victims As To Sexual History, If Any, As Such Information Is Irrelevant And More Prejudicial Than Probative

FRE 412, entitled "Sex Offense Cases; The Victim's Sexual Behavior or Predisposition," states that in cases involving allegations of sexual misconduct, "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" and "[e]vidence offered to prove any alleged victim's sexual predisposition" is inadmissible. FRE 412(a). "Sexual behavior" includes "all activities that involve actual physical conduct, i.e., sexual intercourse and sexual contact" or that include "activities of the mind, such as fantasies or dreams." FRE 412, Advisory Committee Notes, Subdivision (a) (1994). The reference to "sexual predisposition" is "designed to exclude evidence that . . . the proponent believes may have a sexual connotation for the factfinder." Id.

21

It is unclear at this time what defenses, if any, will be raised at trial. Nevertheless, in an abundance of caution, the United States submits that the defendant should be prohibited in limine from presenting any evidence that contravenes FRE 412, including asking about the victims' past sexual behavior or purported sexual predisposition.

The rule applies to all criminal cases, based on the "strong social policy of protecting a victim's privacy and encouraging victims to come forward to report criminal acts." Id. The Advisory Committee Notes explain that:

> The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

Id.

There are only three exceptions to this rule in criminal cases:

- Evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the accused was the source of semen, injury or other physical evidence;

- Evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered to prove consent or if offered by the prosecution; and

- Evidence whose exclusion would violate the defendant's constitutional rights.

FRE 412(b).

Prior to admitting such evidence under one of these exceptions, "the court must conduct a hearing *in camera* and afford the victim and parties a right to attend and be heard." FRE 412(c)(2).  In addition, any such "... motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise." Id.

In addition, the defendant must provide written notice, in the form of a motion, of his intent to use such evidence at least 14 days before trial. FRE 412(c)(1).  Failure to comply with this procedural requirement can result in the exclusion of such evidence.  United States v. Boyles, 57 F.3d 535, 548 (7th Cir. 1995) (affirming exclusion of evidence under Rule 412 where defendant failed to comply with Rule's procedural requirements) (citing Michigan v. Lucas, 500 U.S. 145,151 (1991) ("the legitimate interests served by a notice requirement can . . .  justify precluding evidence of a prior sexual relationship between a rape victim and a criminal defendant")).

Here, none of the exceptions apply.  The first exception does not apply because here there is no physical evidence, such as semen.  The consent exception is equally unavailing because minors – such as the victims here - lack the capacity to consent.  It is well-established that "[m]inors lack the capacity to consent, [] [therefore], sexual contact with a minor is always 'without consent.'"  United States v. Ballinger, 2011 WL 797379 (S.D. Ill. Feb. 28, 2011) (quoting United States v. Rogers, 587 F.3d 816 (7th Cir. 2009)) (emphasis added); see also, United States v. Abad, 350 F.3d 793, 798 (8th Cir.

23

2003) ("The consent or willing participation of the 13-year old girl is insignificant and hardly relevant."). Courts have routinely extended the concept of minors not being able to consent to cases involving such charges as: (i) the sexual exploitation of a child; (ii) distribution of child pornography; and (iii) possession of child pornography, see United States v. Raplinger, 555 F.3d 687, 692 (8th Cir. 2009); as well as (iv) charges of production of child pornography. See Ballinger, 2011 WL 797379 at *1; United States v. Street, 531 F.3d 703, 708 (8th Cir. 2008) (affirming the district court's exclusion of consent evidence as irrelevant in a prosecution under 18 U.S.C. §2251(a)). The last exception is also inapplicable here as the Government is aware of no constitutional right of the defendant that would be violated by the exclusion of such evidence.

Therefore, in the present case, the defendant's cross-examination of the victims regarding any sexual experiences other than those with the defendant should be prohibited, because such evidence is irrelevant and would be more unfairly prejudicial than probative. Any such experiences are completely unrelated to the current charges and any questioning about these experiences falls outside the scope of evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Evid. 401. Because the disclosure of any other sexual experiences holds no probative value, it can

be used only to cast aspersions on the victim's character.  Accordingly, cross-examination on other sexual behavior of any kind should be precluded.

### IV.   The Defendant Should be Prohibited from Informing the Jury that, if convicted, the charges contained in the Indictment carry Mandatory Minimum Sentences

It is well-established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed."  United States v. Shannon, 512 U.S. 573, 579 (1994) quoting, Rogers v. United States, 422 U.S. 35, 40, (1975)(quotations omitted).

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury.  The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.  The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict.  Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.  Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion.

Id. (citing Pope v. United States, 298 F.2d 507, 508 (5th Cir. 1962)).

In Shannon, the United States Supreme Court considered the question of whether a federal district court is required to instruct the jury regarding the consequences to the defendant of a verdict of "not guilty by reason of insanity" either under the Insanity Defense Reform Act of 1984 or as a matter of general federal practice.  512 U.S. at 573.  In concluding that a district court is not required to so instruct the jury, the Court said that "[o]ur central concern here

is that the inevitable result of such an instruction would be to draw the jury's attention toward the very thing – the possible consequences of its verdict – it should ignore." Id. at 586.  The Court noted that "as a general matter, jurors are not informed of mandatory minimum or maximum sentences, nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense." Id. (emphasis added and citations omitted) See also, United States v. Polouizzi, 564 F.3d 142, 162 (2d Cir. 2009) (district court acted within its discretion by declining to instruct jury on mandatory minimum sentence.)

Notwithstanding this general rule, the Court in Shannon did recognize that a jury instruction of some form may be necessary under certain very limited circumstances.  For example, the Court added that,

> [i]f . . . a witness or prosecutor states in the presence of the jury that a particular defendant would "go free" if found [not guilty by reason of insanity ("NGI")], it may be necessary for the district court to intervene with an instruction to counter such a misstatement. The appropriate response, of course, will vary as is necessary to remedy the specific misstatement or error.  We note this possibility merely so that our decision will not be misunderstood as an absolute prohibition on instructing the jury with regard to the consequences of an NGI verdict.

512 U.S. at 587-588.

In this case, there is nothing remotely similar to the very limited circumstance described above.  Because informing the jury of the applicability of the mandatory minimum sentence would be inviting them to consider issues outside their purview, the Government respectfully requests that the defendant

26

be prohibited from mentioning, arguing, or informing the jury in any way as to the possibility of the defendant receiving a mandatory minimum sentence if convicted of any of the charges alleged in the Indictment.

## V.    The Absence of Images with Respect to Count One

The defendant is charged in Count One with production and attempted production of child pornography, for sexually explicit conduct that he enticed induced and persuaded, and attempted to entice, induce and persuade, Kaitlyn to engage in for the purpose of taking images and videos of herself engaged in such conduct to send to him.  As the Court is aware, the Government will not be presenting such images or videos at trial, but the Government will elicit the testimony of Kaitlyn and play audio recordings of the defendant requesting Kaitlyn to engage in sexually explicit conduct for the purpose of sending him pornographic images of her genitals.  Here, the Government simply notes for Your Honor's reference that testimony alone is sufficient to meet the Government's burden with respect to this charge.  See United States v. Coutentos, 651 F.3d 809, 823 (8th Cir. 2011)(jury could reasonably infer that defendant produced or attempted to produce child pornography based on minor victim testimony that he had asked the minors to engage in sexually explicit conduct and pointed a video camera at them).

In United States v. Paris, 2016 WL 1059393 (8th Cir. March 17, 2016), the Eighth Circuit upheld a conviction for production of child pornography based upon testimony when there were no images.  There, the defendant admitted to instructing his nephew to raise his shirt and pull down his pants,

27

and admitted to taking the pictures.  Id. at *1.  However, the defendant "covered his tracks by destroying his phone, camera, memory card, and any trace of the images."  Id. at *2.  Based on this testimony and evidence of the defendant's possession of child pornography, the Eighth Circuit found that the "jury had more than ample evidence to convict Paris of producing child pornography. . . ." Id.  Likewise, the Fourth Circuit in United States v. Buculei, upheld a conviction for production of child pornography even where the defendant failed to capture his sexual abuse of a minor victim only because he failed to adequately rewind the videotape and the recording cut off just before the minor undressed. 262 F.3d 322, 327 (4th Cir. 2001).  The Court wrote that the production count "was complete when [the defendant] induced [the minor victim] into sexually explicit conduct for the purpose of producing a visual depiction thereof." Id. at 328.

Relatedly, in United States v. Polk, 508 F.Supp.2d 89 (D.Me. 2007), the district court noted that a defendant having asked an individual who he believed to be an underage female to take pictures of her private parts in order to send them to him properly constituted the attempted production of child pornography.  The court noted that the fact that the defendant "was unsuccessful in actually producing child pornography does not make the attempt any less reprehensible" and "the statute does not require physical presence." Id. at 95.  Rather, the defendant's behavior "embodies exactly the conduct Congress has unwaveringly sought to eradicate." Id.

28

The Government will present the testimony of Kaitlyn regarding the sexually explicit conduct she engaged in as a result of the defendant's requests. The Government will also seek to admit the defendant's recorded phone message to Kaitlyn asking her to "send me a picture of your pussy" because "I gotta see that young pussy."  (Gov't Ex. 58).  In another message, the defendant told Kaitlyn to "take some pics of you playing with that pussy" and added, "show me, show me that pussy."  (Gov't Ex. 60).  Based on Kaitlyn's testimony and the defendant's own words, the absence of images has no effect on the pending charge.  Accordingly, the Government will be able to meet its burden with respect to Count One.

## **CONCLUSION**

For the forgoing reasons, the Government respectfully submits that the Court should enter an Order (1) precluding the defendant from eliciting any evidence regarding the victims' past sexual or purported sexual predisposition, in violation of FRE 412, and (2) precluding the defendant from informing the jury about the mandatory minimum sentences applicable in this matter.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney


/s/ Danielle Alfonzo Walsman
By: DANIELLE ALFONZO WALSMAN
    MEREDITH J. WILLIAMS
    Assistant United States Attorneys

Dated: April 15, 2016
Newark, New Jersey

## <u>CERTIFICATION OF FILING AND SERVICE</u>

I hereby certify that on April 15, 2016, I caused the Brief in Support of the Government's Motions in Limine to be electronically filed with the Clerk of this Court via Pacer/ECF.

I also certify that on April 15, 2016, I caused the Brief to be served:

by email on Thomas Ambrosio, tambrosio@legal750.com.



<u>s/Danielle Alfonzo Walsman</u>
Danielle Alfonzo Walsman
Meredith J. Williams
Assistant U.S. Attorney

Dated: April 15, 2016